# EXHIBIT A,
# PART 3





UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/874.931 | 06/05/2001 | David A. Spear | 3600.100-Cont. | 3517 |

7590    05/16/2003

David M. Quinlan PC
40 Nassau Street
Princeton, NJ 08542

| EXAMINER |
|---|
| VERDIER, CHRISTOPHER M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3745 | |

DATE MAILED: 05/16/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

# II

| | Application No. | Applicant(s) |
|---|---|---|
| ***Interview Summary*** | 09/874,931 | SPEAR ET AL. |
| | Examiner | Art Unit |
| | Christopher Verdier | 3745 |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Christopher Verdier, PTO.*                    (3)*Rick Kosakowski, Intellectual Property Counsel.*

(2) *David Quinlan, Attorney of Record.*           (4)*Edward Look (SPE); Linda Sholl (SPRE).*

Date of Interview: *14 May 2003*

Type:  a)☐ Telephonic  b)☐ Video Conference
       c)☒ Personal [copy given to: 1)☐ applicant    2)☒ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒ No.
   If Yes, brief description: _____.

Claim(s) discussed: *18,19,22 and 23*

Identification of prior art discussed: *None*

Agreement with respect to the claims f)☐ was reached.   g)☒ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *See Continuation Sheet.*

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note:  You must sign this form unless it is an
Attachment to a signed Office action.

_____
Examiner's signature, if required

U.S. Patent and Trademark Office
PTO-413 (Rev. 04-03)                    Interview Summary                    Paper No. 11.

mmary of Record of Interview Requirement

Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.

All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.
——

 The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.
 It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.
 Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.
 The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

 The Form provides for recordation of the following information:
 – Application Number (Series Code and Serial Number)
 – Name of applicant
 – Name of examiner
 – Date of interview
 – Type of interview (telephonic, video-conference, or personal)
 – Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc)
 – An indication whether or not an exhibit was shown or a demonstration conducted
 – An identification of the specific prior art discussed
 – An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable) Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
 – The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action) ·

 It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

 A complete and proper recordation of the substance of any interview should include at least the following applicable items:
 1) A brief description of the nature of any exhibit shown or any demonstration conducted,
 2) an identification of the claims discussed,
 3) an identification of the specific prior art discussed,
 4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
 5) a brief identification of the general thrust of the principal arguments presented to the examiner,
  (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
 6) a general indication of any other pertinent matters discussed, and
 7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner

 Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

**Examiner to Check for Accuracy**

 If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

2

**Continuation Sheet (PTO-413)**                                    Application No.  09/874,931

  Continuation of Substance of Interview including description of the general nature of what was agreed to if an
agreement was reached, or any other comments: In order to overcome 112, first Paragraph Rejections, Applicants,
agreed to amended independent claims 18 and 23 to recite that the tip profile corresponds to a non-convergent portion
of the inner duct wall of the fan casing. The examiner will revisit the art to determine if the amended claims define over
the art  Applicants will provide a new declaration stating the citizenship of the executor. A proposed statement of
surrender of the original patent is acceptable. It was agreed upon that if the examiner does not agree with Applicants
that an interference should be declared, or does not agree with the manner of setting up the interference, Applicants'
representatives will be contacted via telephone, and given the opportunity for an additional personal interview.

| *Interview Summary* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 09/874,931 | SPEAR ET AL. | |
| | Examiner | Art Unit | |
| | Christopher Verdier | 3745 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Christopher Verdier*.                          (3)_____

(2) *David Quinlan*                                (4)_____

Date of Interview: *15 May 2003*.

Type:  a)☒ Telephonic   b)☐ Video Conference
       c)☐ Personal [copy given to: 1)☐ applicant    2)☐ applicant's representative]

Exhibit shown or demonstration conducted:  d)☐ Yes    e)☒ No.
   If Yes, brief description: _____.

Claim(s) discussed: *18 and 23*.

Identification of prior art discussed: *none*.

Agreement with respect to the claims f)☐ was reached.  g)☐ was not reached.  h)☒ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *Mr. Quinlan proposed not making the amendments to claims 18 and 23 agreed to during the previous interview, but instead removing the claim language of "the inner duct wall of the fan casing proximate to the fan rotor region being convergent" from claims 18 and 23. The examiner indicated that this was acceptable. Applicant will include a summary of the most recent interview in his reponse to the previous Office action.*

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

CHRISTOPHER VERDIER
PRIMARY EXAMINER

Examiner Note:  You must sign this form unless it is an
Attachment to a signed Office action                                Examiner's signature, if required

Attorney Docket No. 3600.100 Cont.

#131C
KCooper
6\10\03

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Reissue Application of | ) | Examiner: C. Verdier |
| | : | |
| DAVID A. SPEAR ET AL. | ) | Group Art Unit: 3745 |
| | : | |
| Appln. No : 09/874,931 | ) | |
| | : | |
| Filed:  June 5, 2001 | ) | |
| | : | |
| For:  SWEPT TURBOMACHINERY BLADE | ) | Date:   May 16, 2003 |

TECHNOLOGY CENTER 3700    RECEIVED    MAY 19 2003

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

AMENDMENT, INFORMATION DISCLOSURE STATEMENT,
AND REVISED REQUEST FOR AN INTERFERENCE

Sir:

In response to the Office Action of November 19, 2002, the time for responding to which

having been extended to May 19, 2003, by the enclosed Petition for Extension of Time, please

amend the above-identified application as indicated below.

CONTENTS

This submission includes the following documents and materials:

1. Amendment, Information Disclosure Statement, and Revised Request for an

   Interference, bound with Appendix A (setting forth the status of all claims upon

   entry of the present Amendment, comprising pp. A1-A3), Appendix B (explaining

   why the rejections of now-canceled claims are believed to have been in error,

   comprising pp. B1-B2), and Appendix C (a proposed Form PTO-850 and

   Interference Initial Memorandum, comprising pp. 1-15).

2.   Statement re Surrender of Original United States Letters Patent No. 5,642,985.

3.   Proposed Supplemental Reissue Declaration.

4.   Form PTO-1449, and a copy of listed issued parent U.S. Patent No. RE38,040.

5.   Declaration of Frans A.E. Breugelmans (pp. 1-23), separately bound with Exhibits 1-14 thereto.

6.   A floppy disc containing the proposed Form PTO-850 and Interference Initial Memorandum (Appendix C) in Microsoft® Word XP®.

7.   Petition for Extension of Time.

IN THE CLAIMS:

Cancel claims 10, 11, 13-17, and 20, without prejudice.

Amend claims 18, 19, and 23 to read as shown below:

Claim 18.  A fan stage of a ducted fan gas turbine engine that is rotatable about an axis of rotation and defines a downstream direction along the axis of rotation, comprising:

a fan casing that defines an inner duct wall having a fan rotor region;

a hub disposed concentrically relative to the fan casing;

a fan rotor that includes multiple swept fan blades, the swept fan blades being spaced apart around the hub, each of the multiple swept fan blades having:

a tip profile that corresponds to the inner duct wall of the fan casing;

a leading edge that defines a variable sweep angle in a direction perpendicular to the axis of rotation, the leading edge including:

an inner region adjacent the hub, the inner region defining a forward sweep angle;

- 2 -

an intermediate region between the inner region and the fan casing, the intermediate region defining a rearward sweep angle; and

an outer region between the intermediate region and the fan casing, the outer region being translated forward relative to a leading edge with the same sweep angle as an outward boundary of the intermediate region.

Claim 19.  The fan stage according to claim 18, wherein the leading edge at a boundary between the intermediate region and the inner region extends further upstream along the axis of rotation than the leading edge of the inner region.

Claim 23.  A fan stage of a ducted fan gas turbine engine that is rotatable about an axis of rotation and defines a downstream direction along the axis of rotation, comprising:

a fan casing that defines an inner duct wall having a fan rotor region;

a hub disposed concentrically relative to the fan casing;



a fan rotor that includes multiple swept fan blades, the swept fan blades being spaced apart around the hub and being capable of rotating at speeds providing supersonic working medium gas velocities over the blades to cause a shock in the gas adjacent the inner duct wall, each of the multiple swept fan blades having:

a tip profile that corresponds to the inner duct wall of the fan casing;

a leading edge that defines a variable sweep angle in a direction perpendicular to the axis of rotation, the leading edge including:

an inner region adjacent the hub, the inner region defining a forward sweep angle;

an intermediate region between the inner region and the fan casing, the intermediate region defining a rearward sweep angle; and

an outer region between the intermediate region and the fan casing, the outer

region being translated forward relative to a leading edge with the same sweep angle as

an outward boundary of the intermediate region to provide a sweep angle that causes the

blade to intercept the shock.

## REMARKS

The applicants would like to express their gratitude for the courtesies extended to their

representatives at the interview on May 14, 2003.  The substance of the interview is recorded in

the Examiner's Interview Summary prepared contemporaneously with the interview.  These

Remarks make reference to the interview where appropriate.

To expedite prosecution of the present application and declaration of an interference with

U.S. Patent 6,071,077 ("the Rolls '077 Patent"), the applicants have canceled rejected claims 10,

11, 13-17, and 20.

The claims remaining in the application are independent claim 18, its dependent claims

19 and 22, and independent claim 23.  Rejected claims 18, 19, and 23 have been amended to

remove all of the language the Examiner said was unsupported and/or indefinite under 35 U.S.C.

§ 112, first and second paragraphs, and replace it with language consistent with the comments in

the Office Action.  (The applicants reserve the right to contest the grounds for the rejections if

necessary at a later date.)

Appendix A indicates the status of all of the claims in the present application and shows

the claim changes by underlining added text and placing deleted text in brackets.

Regarding the proposed interference with the Rolls '077 Patent, the claim changes do not

alter the fact that the applicants' claims are, as stated in the Office Action, "essential copies" of

claims in the Rolls '077 Patent.  In view of the claim changes, the applicants propose setting up

- 4 -

the interference slightly differently from the manner discussed in the Supplemental Preliminary Amendment, Information Disclosure Statement, and Request for an Interference, dated July 19, 2002 ("Original Request for an Interference"). Now, only the applicants' claims 18, 19, 22, and 23 will be involved in the interference, since the remaining claims have been canceled. However, all of the Rolls '077 Patent claims will still be involved in the interference because they represent the same patentable invention as the applicants' claims.

The only other change in how the applicants propose setting up the interference concerns the single interference count, comprising either the applicants' claim 18 or 23 or Rolls '077 Patent claim 1 or 8. Thus, all of the independent claims in the present application and the Rolls '077 Patent are proposed as count alternatives, in accordance with current interference practice. Proposed Count 1 is formulated in this manner so that each party will have the opportunity to establish its priority right using proof of pre-filing date activity (conception, diligence, and actual reduction to practice) relating to any embodiment representing the parties' common invention.

Other than a slightly different interference count and the reduction in the number of the applicants' claims, the manner in which the applicants propose setting up the interference is as set forth in the Original Request for an Interference. However, the showing required by 37 C.F.R. § 1.607(a), applied to the present case as currently constituted, is included below for the sake of completeness. That showing is now supported by the expert testimony in the accompanying Declaration of Frans A.E. Breugelmans ("the Breugelmans Declaration").

Before discussing their revised proposal for an interference, the applicants will explain how the claim changes respond to the rejections in the Office Action.

## I.    RESPONSE TO OFFICE ACTION

 For the record, the applicants believe that all of the rejected claims were fully supported by the present application. Moreover, many of the rejections are equally applicable to the issued patent claims from which the rejected claims were taken, and thus required the approval of the Technology Center Director, per the Manual of Patent Examining Procedure § 2307.02 at 2300-15 (August 2001) ("M.P.E.P."). Nevertheless, the applicants have made the claim changes herein because the resulting claims still support the sought-after interference with the Rolls '077 Patent.

A.    Amendments To Rejected Claims 18, 19, And 23

1.    Claim 18. This claim was rejected under 35 U.S.C. § 112, first and second paragraphs, on several grounds.

a.    Claim 18 was rejected first because it recites that the claimed fan stage is "at least in part" rotatable about an axis of rotation. This recitation originated in claim 8 of the Rolls '077 Patent, which discloses a fan stage rotatable in exactly the same manner as the present application's fan stage, and was apparently meant to take into account the fact that what is claimed comprises both a stationary portion (the fan casing) and a rotating portion (the hub and rotor). The recitation has been deleted from the applicants' claim 18.

b.    The Office Action next contended that there is no support in the present application for claim 18's inner duct wall that is convergent "at the fan rotor region." This recitation has been deleted.

The Office Action acknowledged that the present application discloses a convergent duct wall. In keeping with the PTO practice of giving claims their broadest reasonable interpretation, M.P.E.P. § 2111, the applicants believe that Figure 2 of the present application shows the

convergent part of the duct wall at the region of the fan rotor, because the leading edge 28 of the blade 12 at $r_{t\text{-inner}}$ is within the converging portion of the duct wall. However, the applicants have elected to delete the recitation rather than contest the rejection based on it.

     c.    The third rejection of claim 18 was related to the second, in that the Office Action said that the blade tip does not correspond to the convergent duct wall. The Examiner apparently read the claim language as requiring that the blade tip be convergent, even though claim 18 intentionally omitted that feature of Rolls '077 Patent claim 8.

     The language presented here represents a slightly different approach from that discussed at the interview. Upon further reflection, the applicants were concerned that the language discussed at the interview could have been read to exclude the claim from covering a fan stage with a convergent duct wall and corresponding convergent blade tips. By removing from claim 18 explicit mention of either a convergent duct wall or convergent blade tips, the claim clearly covers such an arrangement.

     In a telephone interview on May 15, 2003, the Examiner agreed that this ground of rejection is obviated by removing from claim 18 the recitation of a convergent duct wall. Figs. 1 and 2 of the application show that the blade tips correspond to the duct wall.

     d.    The next rejection was related to the previous two, in that the Office Action contended that reciting the duct wall as "substantially" convergent renders the claim indefinite. This recitation has been deleted from claim 18, even though it was applicable to Rolls '077 Patent claim 8, from which the applicants took their claim 18.

     e.    The last rejection of claim 18 was based on language relating to the forward translation of the blade outer region. The applicants had intended to recite this feature using the same language as parent application No. 09/343,736 (now U.S. Patent No. RE38,040), which

was allowed by the Examiner of the present application. The applicants apologize for that misunderstanding.

In summary, amended claim 18 complies with the requirements of 35 U.S.C. § 112, second paragraph, and is supported in accordance with 35 U.S.C. § 112, first paragraph. See also Breugelmans Declaration, para. 66.

2.    Claim 19. The present application supports claim 19 in the same manner that the Rolls '077 Patent supports its claim 9. Nevertheless, the applicants have amended claim 19 to reflect their interpretation of Rolls's claim 9. Amended claim 19 is supported by Figure 2. See also Breugelmans Declaration, paras. 53-54 and 67-68.

3.    Claim 22. No separate ground of rejection was directed to this claim, and it has not been amended. Claim 22 is supported in accordance with 35 U.S.C. § 112, first paragraph. See also Breugelmans Declaration, paras. 69-70.

4.    Claim 23. The same rejections applied to claim 18 were applied to claim 23. It has been amended similarly.

Amended claim 23 complies with the requirements of 35 U.S.C. § 112, second paragraph, and is supported in accordance with 35 U.S.C. § 112, first paragraph. See Breugelmans Declaration, para. 71.

Canceled claims 10, 11, 13-17, and 20. Appendix B discusses why the rejections of these claims were in fact not well taken. This is done to foreclose any implication that the applicants have acquiesced in the rejections, should it be necessary later to introduce the canceled claims, or claims similar to them, in an interference with the Rolls '077 Patent.

B.   Objection to Supplemental Reissue Declaration

The Office Action indicated that the Supplemental Reissue Declaration now on file is defective for failing to state the citizenship of the representative of the estate of deceased inventor David A. Spear.

At the interview, it was determined that the claim amendments presented herein require another Supplemental Reissue Declaration. It was also suggested at the interview that a Proposed Supplemental Reissue Declaration be submitted for approval prior to execution.

As discussed at the interview, the applicants will obtain the necessary execution of the enclosed Proposed Supplemental Reissue Declaration upon final approval thereof by the Examiner and after the final form of the claims has been determined.

C.   Statement re Surrender of Original Letters Patent

As requested in the Office Action, a separate paper is enclosed confirming that original U.S. Letters Patent No. 5,642,985 was surrendered in parent reissue application No. 09/343,736. The form of the enclosed separate paper to that effect was approved at the interview.

II.   REVISED REQUEST FOR AN INTERFERENCE

A.   The Present Application and the Rolls '077 Patent Still Interfere

As noted in the Original Request for an Interference, the present application seeks reissue of U.S. Patent No. 5,642,985, assigned to United Technologies Corporation of Hartford, Connecticut ("UTC"). The present application, also assigned to UTC, was filed to provoke an interference with the Rolls '077 Patent.

As mentioned above, the alternate versions of proposed Count 1 of the interference are either the amended version of the applicants' claim 18 or claim 23 or Rolls '077 Patent claim 1 or claim 8. None of the above changes to claims 18 and 23 affect the reasons set forth in the

- 9 -

Original Request for an Interference as to why those claims and Rolls '077 Patent claims 1 and 8 define the same patentable invention. See Original Request for an Interference at 7-12, 14-17. See also Breugelmans Declaration, paras. 8-33.

    B.     Showing under 37 C.F.R. § 1.607(a)

    1.     37 C.F.R. § 1.607(a)(1) -- Identification of the Patent

The patent is the Rolls '077 Patent.

    2.     37 C.F.R. § 1.607(a)(2) -- Proposed Count 1

UTC proposes that the interference be declared with a single count in accordance with the following proposed Count 1:

> A fan stage of a ducted fan gas turbine engine according to claim 18 or claim 23 of application No. 09/874,931 or claim 1 or claim 8 of U.S. Patent No. 6,071,077.

These alternate versions of an interference count are put forward pursuant to the discussion in the Original Request for an Interference, at 15-16. Specifically, the applicants' claim 18 and Rolls '077 Patent claim 8 are proper alternate versions of proposed Count 1 because they are in all relevant respects broader than any other claim in the parties' respective cases. Breugelmans Declaration, para. 20. As between those two claims, the subject matter of narrower Rolls '077 Patent claim 8 would have been obvious from the subject matter of broader present claim 18 for the reasons set forth in paragraphs 20-30 of the Breugelmans Declaration. Conversely, Rolls '077 Patent claim 8 anticipates the applicants' claim 18, since a narrow claim anticipates a broader claim. Chisum on Patents § 3.02[1], at 3-14, and [2], at 3-20 to 3-21. M.P.E.P. § 2131.02.

The next alternate version of proposed Count 1 is the applicants' independent claim 23, which is properly included in Count 1 for the reasons discussed above at page 4. Claim 23 is identical to claim 18, except that claim 23 adds as a feature of the invention that the blade creates

- 10 -

a shock at the duct wall and moves the blade tip forward to intercept it. As compared with Rolls '077 Patent claim 8 and the applicants' claim 18, the feature added to the applicants' claim 23 simply recites explicitly a function of the blades in Rolls '077 Patent claim 8 (as taught by the Rolls '077 Patent) and present claim 18 (as taught by the present application). For the reasons stated in paragraphs 30-31 of the Breugelmans Declaration, the subject matter of Rolls '077 Patent claim 8 and the applicants' claim 18, on the one hand, and the subject matter of the applicants' claim 23, on the other, represent the same patentable invention.

Rolls '077 Patent claim 1 constitutes the last alternate version of proposed Count 1. The difference between Rolls '077 Patent claims 1 and 8 (other than differences in terminology that do not affect this analysis) is that claim 1 recites a "stagger angle which increases progressively with blade height," a limitation not found in claim 8. However, one skilled in the art at the time of the invention knew that to be a necessary feature of all fan blades. See U.S. Patent 4,012,172 to Schwaar et al.; Breugelmans Declaration, Exhibit 2, paras. 20-21. Accordingly, the subject matter of Rolls '077 Patent claim 1, on the one hand, and the subject matter of Rolls '077 Patent claim 8 and the applicants' claims 18 and 23, on the other, represent the same patentable invention. Breugelmans Declaration, paras. 32-33.

3.  37 C.F.R. § 1.607(a)(3) -- Rolls '077 Patent
    Dependent Claims 2-7 and 9-13 Correspond to Count 1

A claim corresponds to an interference count when they both define the same patentable invention. See 37 C.F.R. § 1.601(f) and (i); see also 37 C.F.R. § 1.606. The definition of "same patentable invention" is found in 37 C.F.R. § 1.601(n). This "same patentable invention" inquiry requires two-way obviousness (count-to-claim and claim-to-count).

The subject matter of Rolls '077 Patent dependent claims 2-7 and 9-13 would have been obvious from each of the alternate versions of proposed Count 1 for the reasons set forth in

- 11 -

paragraphs 34-62 of the Breugelmans Declaration. As dependent claims, they are narrower than each of the alternate versions of proposed Count 1 and therefore anticipate proposed Count 1. Chisum on Patents, supra; M.P.E.P., supra.

    4.    37 C.F.R. § 1.607(a)(4) -- Applicants' Dependent Claims 19 and 22 Correspond to Count 1

The applicants' dependent claims 19 and 22 would have been obvious from each of the alternate versions of proposed Count 1 for the reasons set forth in paragraph 63 of the Breugelmans Declaration. As dependent claims, they are narrower than each of the alternate versions of proposed Count 1 and therefore anticipate proposed Count 1. Id.

    5.    37 C.F.R. § 1.607(a)(5) -- The Present Application Supports Applicants' Claims 18, 19, 22, and 23

All of the applicants' claims are all supported by the present application as set forth in paragraphs 65-71 of the Breugelmans Declaration.

    6.    37 C.F.R. § 1.607(a)(6) -- The Requirements of 35 U.S.C. § 135(b) are Met

This is covered in the Original Request for an Interference, at 32.

    C.    Summary of Interference

The interference should be declared with UTC as the senior party and Rolls-Royce PLC as the junior party, in the following manner:

Count 1

A fan stage of a ducted fan gas turbine engine according to claim 18 or claim 23 of application No. 09/874,931 or claim 1 or claim 8 of U.S. Patent No. 6,071,077

Claims designated as corresponding to Count 1

U.S. Patent 6,071,077: claims 1-13
Application No. 09/874,931: claims 18, 19, 22, and 23

Claims designated as not corresponding to Count 1

U.S. Patent 6,071,077: none
Application No. 09/874,931: none

Effective filing dates

UTC:  Nov. 17, 1995
Rolls:  Oct. 9, 1998

It was agreed at the interview that the Examiner will contact the applicants'

representative concerning an additional personal interview if the Examiner either disagrees that

there is interfering subject matter in the present application and U.S. Patent 6,071,077 or

determines that the interference should be declared in any manner other than as stated here.

III.    INFORMATION DISCLOSURE STATEMENT

The Examiner is requested to consider U.S. Patent No. RE38,040 listed on the enclosed

Form PTO-1449 and return a copy of the Form PTO-1449 indicating that the patent has been

considered.

IV.    SUMMARY

The Examiner is again requested to forward the present application to the Board of Patent

Appeals and Interferences pursuant to 37 C.F.R. § 1.609(a) for declaration of an interference.

To assist the Examiner in preparing the application for the requested interference, a new

completed Form PTO-850 and accompanying Interference Initial Memorandum, with which the

Examiner can forward the application to the Board, are attached as Appendix C. The enclosed

floppy disc containing the Form PTO-850 and Interference Initial Memorandum in Microsoft®

Word XP® will facilitate any editing of those documents that the Examiner may wish to do.

Any fees due on account of this paper, including the Information Disclosure Statement,

may be charged to Deposit Account No. 50-0409.

- 13 -

All correspondence should continue to be sent to the attorney named below at the address

shown.

Respectfully submitted,

Attorney for Applicants
Registration No. 26,641

David M. Quinlan
DAVID M. QUINLAN, P.C.
40 Nassau Street
Princeton, NJ 08542
Telephone: (609) 921-8660
Facsimile: (609) 921-8651
E-mail: quinlanpc@msn.com

- 14 -

A

Application No. 09/874,931

## APPENDIX A

Pursuant to 37 C.F.R. § 1.173(c), the following shows the current status of claims 1-23 of the above-identified application upon entry of the Amendment, Information Disclosure Statement, and Revised Request for an Interference of May 16, 2003 ("Amendment"), submitted herewith. Claim changes made by the Amendment are shown by underlining added text and placing deleted text in brackets. The present application supports the amended claims as discussed in the Breugelmans Declaration, para. 65-71.

Claims 1-17. (Canceled).

Claim 18 (Twice amended) A fan stage of a ducted fan gas turbine engine that is [at least in part] rotatable about an axis of rotation and defines a downstream direction along the axis of rotation, comprising:

a fan casing that defines an inner duct wall having a fan rotor region [, the inner duct wall of the fan casing at the fan rotor region being convergent];

a hub disposed concentrically relative to the fan casing;

a fan rotor that includes multiple swept fan blades, the swept fan blades being spaced apart around the hub, each of the multiple swept fan blades having:

a tip profile that [substantially] corresponds to the [convergent] inner duct wall of the fan casing;

a leading edge that defines a variable sweep angle in a direction perpendicular to the axis of rotation, the leading edge including:

an inner region adjacent the hub, the inner region defining a forward sweep angle;

- A1 -

Application No  09/874,931

an intermediate region between the inner region and the fan casing, the

intermediate region defining a rearward sweep angle; and

an outer region between the intermediate region and the fan casing, the outer

region being translated forward relative to a [the] leading edge with the same sweep angle

as [at] an outward boundary of the intermediate region.

Claim 19.  (Amended)  The fan stage according to claim 18, wherein the leading edge at

a boundary between the intermediate region and the inner region extends further upstream along

the axis of rotation than the leading edge of the inner region [along the axis of rotation].

Claims 20 and 21.  (Canceled)

Claim 22.  (Original)  The fan stage according to claim 18, wherein each of the multiple

swept fan blades includes a hub contacting surface that extends further than the tip profile along

the axis of rotation.

Claim 23.  (Amended)  A fan stage of a ducted fan gas turbine engine that is [at least in

part] rotatable about an axis of rotation and defines a downstream direction along the axis of

rotation, comprising:

a fan casing that defines an inner duct wall having a fan rotor region [, the inner duct wall

of the fan casing at the fan rotor region being convergent];

a hub disposed concentrically relative to the fan casing;

a fan rotor that includes multiple swept fan blades, the swept fan blades being spaced

apart around the hub and being capable of rotating at speeds providing supersonic working

medium gas velocities over the blades to cause a shock in the gas adjacent the inner duct wall,

each of the multiple swept fan blades having:

- A2 -

Application No. 09/874,931

a tip profile that [substantially] corresponds to the [convergent] inner duct wall of the fan casing;

a leading edge that defines a variable sweep angle in a direction perpendicular to the axis of rotation, the leading edge including:

an inner region adjacent the hub, the inner region defining a forward sweep angle;

an intermediate region between the inner region and the fan casing, the intermediate region defining a rearward sweep angle; and

an outer region between the intermediate region and the fan casing, the outer region being translated forward relative to a [the] leading edge with the same sweep angle as [at] an outward boundary of the intermediate region to provide a sweep angle that causes the blade to intercept the shock.

B

Application No. 09/874,931

## APPENDIX B

The following explains why the rejections of claims 10, 11, 13-17, and 20, in the above-identified application, canceled in the Amendment, Information Disclosure Statement, and Revised Request for an Interference of May 16, 2003 ("Amendment"), submitted herewith, were in fact not well taken.

Claim 10. The rejection of this claim included the last four grounds of rejection applied to claim 18, and the discussion at pages 6-8 of the Amendment (sections I.A.1.b. to I.A.1.e.) applies equally to claim 10.

Claim 10 was also rejected because it recites that the blade stagger angle "increases progressively with blade height." This feature is inherently disclosed in the present application by virtue of the discussion at column 3, lines 3-6, when taken with established principles for constructing gas turbine engine fan blades, as described in prior art such as U.S. Patent 4,012,172 to Schwaar et al. See also Breugelmans Declaration, para. 33.

Claim 11. The principal ground of rejection of this claim is understood to have been directed to the recitation that the stagger angle increases to less than 90° at the blade tip relative to the airflow direction.

Initially, the stagger angle in any fan blade increases from the root to the tip, as discussed above in connection with claim 10. In addition, Figure 3 of the present application (which corresponds to Figure 5c of the Rolls '077 Patent) shows that the stagger angle at the blade tip is less than 90° relative to the airflow direction, as recited in claim 11.

Claim 13. No separate ground of rejection was directed to this claim.

- B1 -

Application No. 09/874,931

Claim 14.  The subject matter of this claim was related to the stagger angle recitations in claims 10 and 11, and is inherently disclosed in the present application for the same reasons discussed above in connection with claims 10 and 11.  That is, since the stagger angle of all fan blades must increase from root to tip, the stagger angle in a blade mid-height region will necessarily be a predetermined fraction of the stagger angle at the blade tip, as recited in canceled claim 14.

Claim 15.  The subject matter of this claim involved the concept of a Mach cone and the relation of the blade leading edge sweep angle to the complement of the Mach cone.  For the reasons explained in the Breugelmans Declaration, paras. 42-45, claim 15 is no more than a restatement of the leading edge geometry in claim 10 using different words.  Since the present application discloses that geometry, it perforce supports claim 15.

Claim 16.  This claim does no more than recite a necessary property of all gas turbine engine swept fan blades, as discussed in the Breugelmans Declaration, paras. 46-48.  Since the present application discloses a swept fan blade for a gas turbine engine, it also discloses the subject matter of this claim.

Claim 17.  The subject matter of this claim is supported for the same reasons as the subject matter of claim 15.  See Breugelmans Declaration, paras. 49-52.

Claim 20.  This claim has been canceled because it recited the same subject matter as claim 18 and therefore was redundant.  It was based on Rolls claim 10, which is likewise redundant of Rolls claim 8.  During prosecution of the Rolls '077 Patent application, the limitations of claim 10 were incorporated into claim 8, but claim 10 was not canceled.  It is thus unnecessary to include in the present application a counterpart of Rolls's claim 10.

C

## APPENDIX C

**INTERFERENCE INITIAL MEMORANDUM**
**BOARD OF PATENT APPEALS AND INTERFERENCES: An interference is found to exist between the following cases:**
This interference involves __2__ parties

| PARTY<br>Spear et al. | APPLICATION NO.<br>09/874,931 | FILING DATE<br>June 5, 2001 | PATENT NO. IF ANY | ISSUE DATE, IF ANY |
|---|---|---|---|---|

If application has been patented, have maintenance fees been paid? _____ Yes _____ No __X__ Maintenance fees not due yet

**Accorded the benefit of:

| COUNTRY | APPLICATION NO. | FILING DATE | PATENT NO. IF ANY | ISSUE DATE, IF ANY |
|---|---|---|---|---|
| United States | 09/343,736 | June 30, 1999 | RE38,040 | March 18, 2003 |
| United States | 08/559,965 | November 17, 1995 | 5,642,985 | July 1, 1997 |

| The claim(s) of this party which correspond(s) to this count is (are):<br>PATENTED OR PATENTABLE PENDING CLAIMS<br>18, 19, 22, and 23 | UNPATENTABLE PENDING CLAIMS<br>None |
|---|---|
| The claim(s) of this party which does (do) not correspond(s) to this count is (are):<br>PATENTED OR PATENTABLE PENDING CLAIMS<br>None | UNPATENTABLE PENDING CLAIMS<br>None |

| PARTY<br>Rowlands | APPLICATION NO.<br>09/168,968 | FILING DATE<br>October 9, 1998 | PATENT NO. IF ANY<br>6,071,077 | ISSUE DATE, IF ANY<br>June 6, 2000 |
|---|---|---|---|---|

If application has been patented, have maintenance fees been paid? ;_____ Yes _____ No __X__ Maintenance fees not due yet

**Accorded the benefit of:

| COUNTRY | APPLICATION NO. | FILING DATE | PATENT NO. IF ANY | ISSUE DATE, IF ANY |
|---|---|---|---|---|
| | | | | |
| | | | | |

| The claim(s) of this party which correspond(s) to this count is (are):<br>PATENTED OR PATENTABLE PENDING CLAIMS<br>1-13 | UNPATENTABLE PENDING CLAIMS<br>Does not apply |
|---|---|
| The claim(s) of this party which does (do) not correspond(s) to this count is (are):<br>PATENTED OR PATENTABLE PENDING CLAIMS<br>None | UNPATENTABLE PENDING CLAIMS<br>Does not apply |

**Instructions**

1. For every patent involved in the interference, check if the maintenance fees have been paid by using the patent number with PALM screen 2670. If fees are due and they have not been paid, the interference cannot be declared since it would involve an expired patent. (35 U.S.C. 135(a); 37 CFR 1.606).
2. For each party, separately identify the patentable and unpatentable claims which correspond to the count. (37 CFR 1.601(f), 1.601(n), 1.609(b)(2)).
3. For each party, separately identify the patentable and unpatentable claims which do not correspond to the count (37 CFR 1.609(b)(3)).
4. Forward all files including those the benefit of which is being accorded.
5. Keep a copy of the Interference Initial Memorandum and any attachments for your records.

All information requested below must be attached on (a) separate typewritten sheet(s)

6. On a separate sheet, set forth a single proposed interference count. If any claim or any part is exactly the same word for word as this count, please indicate the party, application or patent number, and the claim number.
7. For each claim designated as corresponding to the count, provide an explanation of why each claim defines the same patentable invention as the count (37 CFR 1.609(b)(2)).
8. For each claim designated as not corresponding to the count, provide an explanation of why each claim defines a separate patentable invention from the count (37 CFR 1.609(b)(3)).
9. For each additional count, if any, repeat steps 2-8 and, additionally, provide an explanation why each count represents a separate patentable invention from every other count (37 CFR 1.609(b)(1)).

| DATE | PRIMARY EXAMINER (Signature)<br><br>Christopher Verdier | TELEPHONE NO.<br>703-308-2638 | ART UNIT<br>3745 |
|---|---|---|---|
| DATE | GROUP DIRECTOR SIGNATURE (if required) | | |

**The application number and filing date of each application the benefit of which is intended to be accorded must be listed. It is not sufficient to merely list the earliest application if there are intervening applications necessary for continuity.

**THIS PAGE CAN BE DUPLICATED IF THERE ARE MORE THAN TWO INTERFERING PARTIES.**

FORM PTO-850

Application Control No. 09/874,931
Page 2
Art Unit 3745

## COUNT

A fan stage of a ducted fan gas turbine engine according to

Claim 18 of Application No. 09/874,931 (Alternate A)

OR

Claim 23 of Application No. 09/874,931 (Alternate B)

OR

Claim 1 of Patent No. 6,071,077 (Alternate C)

OR

Claim 8 of Patent No. 6,071,077 (Alternate D)

**Claims 18 and 23 of Application No. 09/874,931 and claims 1 and 8
of Patent No. 6,071,077 All Define the Same Patentable Invention**

The Count is patentable over the prior art of record because the prior art fails to show a

fan stage of a ducted fan gas turbine engine comprising a fan blade having a leading edge that,

in a direction outward from the fan axis of rotation, has an inner region with a forward sweep

angle, an intermediate region having a rearward sweep angle, and an outer region translated

forward relative to a leading edge with the same sweep angle as an outward boundary of the

intermediate region so as to have a decreased sweep angle. The closest prior art of record is

represented by fan blades such as those shown in U.S. Patents No. 4,012,172 to Schwaar et al.

and No. 4,726,737 to Weingold et al. Those fan blades have leading edges that are swept

forward in an inner region and then swept rearward. However, the prior art does not show such

a fan blade having a decreased sweep angle in an outer region.

Claim 18 of Application No. 09/874,931 (Alternate A) and claim 8 of Patent No.

6,071,077 (Alternate D) are broader in all relevant respects than any other claim in Application

No. 09/874,931 or U.S. Patent No. 6,072,077.

Application Control No. 09/874,931
Page 3
Art Unit 3745

The following table shows Alternate A and Alternate D of the Count side-by-side.

| Count Alternate A | Count Alternate D |
|---|---|
| A fan stage of a ducted fan gas turbine engine that is rotatable about an axis of rotation and defines a downstream direction along the axis of rotation, comprising: | A fan stage of a ducted fan gas turbine engine that is <u>at least in part</u> rotatable about an axis of rotation and defines a downstream direction along the axis of rotation, comprising: |
| a fan casing that defines an inner duct wall having a fan rotor region; | a fan casing that defines an inner duct wall having a fan rotor region, <u>the inner duct wall of the fan casing at the fan rotor region being convergent;</u> |
| a hub disposed concentrically relative to the fan casing; | a hub disposed concentrically relative to the fan casing; |
| a fan rotor that includes multiple swept fan blades, the swept fan blades being spaced apart around the hub, each of the multiple swept fan blades having: | a fan rotor that includes multiple swept fan blades, the swept fan blades being spaced apart around the hub, each of the multiple swept fan blades having: |
| a tip profile that corresponds to the inner duct wall of the fan casing; | a tip profile that is <u>convergent so as to substantially</u> correspond to the <u>convergent</u> inner duct wall of the fan casing; |
| a leading edge that defines a variable sweep angle in a direction perpendicular to the axis of rotation, the leading edge including: | a leading edge that defines a variable sweep angle in a direction perpendicular to the axis of rotation, the leading edge including: |
| an inner region adjacent the hub, the inner region defining a forward sweep angle; | an inner region adjacent the hub, the inner region defining a forward sweep angle; |
| an intermediate region between the inner region and the fan casing, the intermediate region defining a rearward sweep angle; and | an intermediate region between the inner region and the fan casing, the intermediate region defining a rearward sweep angle; and |
| an outer region between the intermediate region and the fan casing, the outer region <u>being translated forward relative to a leading edge with the same sweep angle as an outward boundary of the intermediate region.</u> | an outer region between the intermediate region and the fan casing, the outer region <u>defining a forward sweep angle.</u> |

Application Control No. 09/874,931
Page 4
Art Unit 3745

Alternate A and Alternate D of the Count define the same patentable invention under 37

C.F.R. § 1.601(n).

As for the obviousness of narrower Alternate D (claim 8 of Patent No. 6,071,077) from

broader Alternate A (claim 18 of Application No. 09/874,931), the first limitation in Alternate D

not found in Alternate A is that the fan stage is "at least in part" rotatable. This recitation adds

nothing of substance to Alternate D. Initially, the recitation appears in the count preamble and

does not recite any structural feature of the fan stage itself. In addition, the rotatable parts of the

fan stage recited in Alternate A (the hub and the rotor) are rotatable in the same fashion as the

corresponding parts in Alternate D.

The next limitation in Alternate D but not Alternate A is a duct wall that is convergent at

the fan rotor region and a blade tip profile that is convergent so as to substantially correspond to

the convergent inner duct wall of the fan casing.

One of ordinary skill in the art would have used Alternate D's convergent duct wall and

matching convergent blade tips in Alternate A's fan stage for a number of reasons. First, fans

with convergent casings and matching convergent blade tip profiles had been conventional for

decades by the filing dates of Application No. 09/874,931 and Patent No. 6,071,077, as shown in

Fig. 1 of U.S. Patent 4,408,957 to Kurzrock et al., Fig. 2 of U.S. Patent 5,408,826 to Stewart et

al., and Fig. 1 of Schwaar.

In addition, Patent No. 6,071,077, from which Alternate D is taken, does not assert that a

convergent duct wall and matching blade tip profile, in combination with the disclosed blade

leading edge geometry, provides any advantage that would not have been known to those skilled

in the art. Patent No. 6,071,077, at column 6, lines 21-26, points to the discussion of a

convergent casing in Patent No. 5,642,985, which is being reissued by Application No.

Application Control No. 09/874,931
Page 5
Art Unit 3745

09/874,931 (from which Alternate A is taken). However, Patent No. 6,071,077 misconstrues what Patent No. 5,642,985 says in that regard. The discussion in Patent No. 5,642,985 (and Application No. 09/874,931) teaches that the casing wall can be made convergent to ameliorate the problem of pressure wave reflection, noting at the same time that mechanical and aerodynamic constraints may not permit sufficient convergence to eliminate the shock problem. Application No. 09/874,931, col. 3, lines 58-63. Then, just like Patent No. 6,071,077, Application No. 09/874,931 says that the blade configuration provides the solution. Col. 3, lines 64-67.

Furthermore, the prior art teaches the conventionality of providing Alternate A's fan with a convergent blade tip profile that substantially corresponds to a convergent fan casing. It was conventional to provide gas turbine engine fans with convergent casings and matching convergent fan blade tip profiles, as shown by Schwaar, Kurzrock, and Stewart. Stewart also emphasizes the importance of making the radial clearance between the convergent blade tips and converging wall casing as small as possible to minimize "efficiency damaging air leakage across the blade tips." Stewart does this by providing an abradable coating 25 on the convergent casing and cutting a convergent path through the coating with the convergent blade tips to ensure that the convergent casing and blade tips conform exactly. Stewart, Fig. 2; col. 3, lines 45-50.

Accordingly, one of ordinary skill in the art would have provided Alternate A's fan stage with a convergent blade tip profile that substantially corresponds to the convergent wall casing.

The only other difference between Alternate A and Alternate D is that Alternate A recites an outer region that is "translated forward relative to a leading edge with the same sweep angle as an outward boundary of the intermediate region." Alternate D recites this feature differently, calling for an outer region "defining a forward sweep angle."

Application Control No. 09/874,931
Page 6
Art Unit 3745

Application No. 09/874,931, from which Alternate A is taken, teaches that the blade tip leading edge must be moved forward a sufficient distance to intercept the shock wave at the duct wall. Once one skilled in the art had been taught by Alternate A to translate the outer region forward, that person would have known to translate the outer region sufficiently to provide a forward sweep angle to intercept the shock wave under all circumstances. Stated another way, Alternate A's blade reduces leading edge sweep in an outer or tip region for the same reason as Alternate D's blade: to move the shock behind the blade leading edge so the blade intercepts the shock at the fan casing. See Application No. 09/874,931, col. 4, lines 1-6; col. 4, line 63, to col. 5, line 4; Patent No. 6,071,077, col. 4, lines 18-21. Accordingly, a fan engineer of ordinary skill would have known from Alternate A to translate the leading edge at the tip of the blade forward as far as necessary to intercept the shock there.

Accordingly, the subject matter of Alternate D would have been obvious from the subject matter of Alternate A, assuming the subject matter of Alternate A to be prior art with respect to Alternate D in accordance with 37 C.F.R. § 1.601(n). In addition, Alternate A is broader in all respects than Alternate D, because Alternate D includes limitations omitted from Alternate A. Alternate D thus anticipates Alternate A. M.P.E.P. § 2131.02, Aug. 1991 (8th ed).

Alternate B is identical to Alternate A, except that Alternate B recites a shock at the duct wall and calls for the blade leading edge to be translated forward to provide a sweep angle that intercepts the shock. Accordingly, Alternate B simply recites explicitly a feature both of Alternate A, as taught by Application No 09/874,931 (from which Alternate A is taken), at column 4, lines 1-6, and column 4, line 63, to col. 5, line 4, and of Alternate D, as taught by Patent No. 6,071,077 (from which Alternate D is taken), at column 4, lines 18-21.

Application Control No. 09/874,931
Page 7
Art Unit 3745

Therefore, the subject matter of either Alternate A or Alternate D would have taught one
of ordinary skill in the art the subject matter of Alternate B.

In addition, Alternate B is narrower in all respects than Alternate A, and therefore
Alternate B anticipates Alternate A. M.P.E.P., supra.

Alternate B does not include the limitations in Alternate D discussed above in connection
with Alternate A. However, Alternate B is identical to Alternate A, except that Alternate B
explicitly recites the shock-intercepting feature of the blade of both Alternate A and Alternate D.
Accordingly, the subject matter of Alternate B would have taught one of ordinary skill in the art
the subject matter of Alternate D, as discussed above in connection with Alternate A.

The difference between Alternate C and Alternate D (other than minor differences in
terminology) is that Alternate C adds to Alternate D a "stagger angle which increases
progressively with blade height."

Any fan blade's stagger angle (or "blade twist") must increase progressively with blade
height because the blade's circumferential velocity ("$V_x$" in Fig. 2 of Schwaar) progressively
increases with blade height, while the axial airflow velocity ("$V_y$" in Fig. 2 of Schwaar) remains
essentially constant. As Schwaar points out, it is a "basic consideration of blade design" that the
twist angle "t" shown in Fig. 2 increases with blade height. Schwaar, col. 3, line 66, to col. 4,
line 21. Accordingly, the stagger angle limitation added to Alternate C is an inherent feature of
all fan blades, and therefore it would at least have been obvious to incorporate it in the fan blades
in Alternates A, B, and D.

Nor is there anything in Patent No. 6,071,077 to suggest that adding Alternate C's
increasing stagger angle to a fan blade with a convergent blade tip and matching duct wall, and
explicitly recited forward sweep angle in an outer region of the blade leading edge, provides any

Application Control No. 09/874,931
Page 8
Art Unit 3745

advantage not present in a blade with a forward translated outer blade region and without a

convergent blade tip (as in Alternates A and B). Accordingly, the subject matter of Alternate C

would have been obvious from the subject matter of Alternates A, B, and D.

In addition, Alternate C is narrower than Alternate D, and therefore Alternate C

anticipates Alternate D. M.P.E.P., supra. Alternate C is narrower than Alternates A and B

because the latter omit Alternate C's limitations that the duct wall and blade tip profile are

convergent and that the stagger angle increases with increasing blade height. Therefore,

Alternate C anticipates Alternates A and B. Id.

### CLAIMS CORRESPONDING TO THE COUNT

**Claims 1-13 of Patent No. 6,071,077 Are Designated to
Correspond to the Count**

Claim 1. This claim is Alternate C of the Count. It is directed to the same patentable

invention as each of Alternates A and B for the reasons already discussed above.

Claims 2 and 3. Claim 2 depends from claim 1. It recites a "tip region," but neither it

nor its base claim 1 defines this term. Consequently, this claim essentially defines a region of

the blade at the tip that constitutes an arbitrary amount of the blade's span. As a result, this

limitation has no patentable significance.

Claim 2's "tip region" could be taken as being that portion of the blade in which the

leading edge transitions from the rearward sweep in claim 1's intermediate height region to the

forward swept in claim 1's third height region, although that is what claim 3 is understood to add

to claim 2. However, if that is the meaning of this limitation, then it would have been obvious to

choose any suitable place on the leading edge, such as the last 20% of blade height recited in

claims 2 and 3, at which to begin the transition to forward sweep. Put another way, each of

Alternates A and B taken from Application No. 09/874,931 teaches a blade with a leading edge

Application Control No. 09/874,931
Page 9
Art Unit 3745

profile with an outer region that is moved forward to provide certain aerodynamic advantages. A fan engineer of ordinary skill, knowing the purpose of that blade geometry (see above), would have found it obvious to begin translating the outer region of the leading edge forward at the proper place, say the last 20%, as would be necessary to accomplish that purpose.

As for the recitation of a stagger angle at the blade tip of approximately 70° relative to the airflow direction, this limitation would have been obvious from the subject matter either of Alternate A or B for the same reasons that the recited extent of the forward swept tip region would have been obvious. That is, the fan engineer of ordinary skill, faced with a set of fan performance requirements, would have simply made a blade with a stagger angle at the tip that satisfies the requirement that the flow approach the blade at the proper angle. That the angle might be 70° relative to the airflow direction for a given fan stage thus would simply be a matter of proper engineering. Note also that the stagger angle "t" at the blade tip as measured in Fig. 2 of Schwaar is 70°.

Nor do the limitations from claim 1 relating to the convergent blade tip and forward sweep in the outer blade region impart separate patentability to claims 2 and 3, since they would not change the manner in which one of ordinary skill in the art would design a fan blade as discussed herein regarding claims 2 and 3.

Claim 4. This claim modifies claim 3, adding that the stagger angle of the mid-height region of the blade is in the range from approximately 30° to approximately 55° relative to the airflow direction.

This claim is obvious from either of Alternate A or B for the same reasons as claim 2 discussed above. That is, the stagger angle of a fan blade at any particular point on the blade is simply a function of good design technique, taking into account the

Application Control No. 09/874,931
Page 10
Art Unit 3745

operating conditions to be encountered by the blade. In addition, Fig. 6 of Schwaar

shows a swept fan blade with a stagger angle between 30° and 55° in the blade mid-height

region.

Nor do the limitations from claim 1 relating to the convergent blade tip and

forward sweep in the outer blade region impart separate patentability to claim 4, since

they would not change the manner in which one of ordinary skill in the art would design

a fan blade as discussed herein regarding claim 4.

Claim 5. This claim depends from claim 1, and adds the limitation that the sweep

angle at any given point on the leading edge is less than the complement of the angle of a

Mach cone at any other point on the leading edge of the blade at greater radius from the

root.

Initially, it is conventional to use the concept of a "Mach cone" in analyzing supersonic

flow over a gas turbine engine fan blade. U.S. Patent No. 3,989,406 to Bliss et al. discusses

Mach cone angles, and Bliss's Figure 2 is a three-dimensional depiction of theoretical Mach

cones associated with points on a fan blade leading edge. Bliss shows a blade with a leading

edge swept to a degree that it is always subject to subsonic velocities, thus theoretically

eliminating the difficulties associated with shock waves. This is the opposite of claim 5, in that

Bliss's sweep angle (call it "$\sigma$") is greater than the complement of the Mach cone angle $\alpha$ (that is,

$\sigma > 90° - \alpha$).

Claim 5 thus does no more than use different words to say the same thing as Alternates A

and B. Put another way, consider what would happen if Alternate A and B did not meet claim 5:

there would be no shock system to account for by using the leading edge configuration in those

claims. Furthermore, Alternate B explicitly recites the presence of a shock wave in the flow,

Application Control No. 09/874,931
Page 11
Art Unit 3745

meaning that its leading edge must have the Mach cone relationship recited in claim 5.

Accordingly, the leading edge orientation in claim 5 is anticipated by Alternate A or B.

Claim 6. This claim depends from claim 1. It says that the shape of the pressure surface and suction surface of claim 1's blade creates a line of minimum static pressure points on the suction surface of the blade, which line is inclined with respect to the axial direction at a sweep angle which varies with span height of the blade, with a negative value in a region of subsonic flow over the leading edge.

Initially, a gas turbine engine fan blade is by definition an airfoil with a suction surface and a pressure surface. See Fig. 3 of Weingold. Accordingly, at each location along the blade height, the suction surface will inherently have a minimum static pressure point. The locus of those points will, again by definition, be a line of minimum static pressure points.

Good fan blade design required that the line of minimum static pressure points for a swept fan blade essentially follow the leading edge profile, as shown in Weingold. In other words, given the leading edge geometry of the blade in Alternate A or B, and conventional fan design practice as exemplified by Weingold, one of ordinary skill in the art would have inclined the lines of minimum static pressure points in the blade of Alternate A or B at a sweep angle that varied with blade height, and that sweep angle would have been negative in the inner, subsonic-flow region of the blade, just as in claim 6.

Claim 7. This claim depends from claim 6, modifying it to add that the sweep angle of the line of minimum static pressure points at a point on the line is less than the complement of a Mach cone angle at any other point on the line.

This claim relates to the same concept as claim 5. Mach cones associated with a blade's line of minimum static pressure points were known from Weingold, which is referred to in Patent

Application Control No. 09/874,931
Page 12
Art Unit 3745

No. 6,071,077 at column 7, lines 25-27. Fig. 2a of Weingold illustrates Mach cones associated with a line of minimum static pressure points.

Weingold put the blade's maximum camber line 42 (associated with the line of minimum pressure points) behind the Mach cone associated with any inboard point of maximum camber. As in Bliss, the purpose of Weingold's geometry was to eliminate shock waves. Like claim 5, claim 7 puts the line of minimum static pressure points ahead of the Mach cone, the opposite of Weingold's geometry.

Accordingly, claim 7 does no more than recite a blade that creates shock waves, as discussed above in connection with claim 5. But unless the blade in Alternate A or B also creates shock waves, there is no reason for them to have the geometry that represents the invention embodied in those claims. And Alternate B explicitly recites the presence of a shock system, which means it even more clearly anticipates claim 7's recitation of a particular orientation of the blade's line of minimum static pressure points.

Claim 8. This claim is Alternate D of the Count. It is directed to the same patentable invention as each of Alternates A and B for the reasons already discussed above.

Claim 9. This claim modifies claim 8 by adding that the blade's intermediate region extends further than the inner region along the fan's axis of rotation.

Initially, this claim is difficult to understand because it is not clear what part of the blade's intermediate region is meant to "extend" further than the inner region along the rotational axis. Based on the disclosure at column 5, lines 23-51, and especially lines 26-28, of Patent No. 6,071,077, it appears that this claim means to say that the blade leading edge at the boundary between the inner and intermediate regions (segment $S_5$ in Figure 7a), is further upstream along the axis than the inner region (from the hub to segment $S_5$). As is the case with claims 5 and 7,

Application Control No. 09/874,931
Page 13
Art Unit 3745

discussed above, claim 9 does no more than recite a feature of the blade in Alternate A or B.

That is, a blade with a forward swept inner region and a rearward swept intermediate region must

have claim 9's configuration. See Figures 1 and 2 of Application No. 09/874,931 and Figures

3a, 5a, and 7a of Patent No. 6,071,077, and Figures 4 and 6 of Schwaar.

   Claim 10. This claim purports to modify claim 8, reciting that the inner duct wall

of the fan casing at the fan rotor region is substantially convergent in the downstream

direction. However, this is already a feature of Alternate D (claim 8), which means that

claim 10 includes nothing to distinguish it patentably from Alternate A and B.

   Claim 11. This claim purports to modify claim 8, reciting that the tip profile of the swept

fan blades are substantially convergent in the downstream direction. As with claim 10, this is

already a feature of Alternate D (claim 8), which means that claim 11 also includes nothing to

distinguish it patentably from Alternate A and B.

   Claim 12. This claim recites that the inner duct wall of the fan casing is not parallel to

the tip profile of each of the multiple swept fan blades. Accordingly, it contradicts claim 8

(Alternate D), which recites that the blade tip profile is configured to "substantially correspond

to the convergent inner duct wall." Nonetheless, it would have been well within the skill of a gas

turbine engine designer to incorporate into Alternate A or B's fan casing an inner wall that is not

parallel to the blade tip profile, as shown in U.S. Patent No. 4,012,165 to Kraig (Fig. 1; movable

door 32).

   Claim 13. This claim modifies claim 8 by adding that each of the fan blades includes a

hub contacting surface that extends further than the tip profile along the axis of rotation, and as

such relates to physical properties of the blade rather than its aerodynamic performance. The

features recited in this claim are no more than the result of application by one of ordinary skill in



Application Control No. 09/874,931
Page 14
Art Unit 3745

the art of routine design techniques to determine optimum blade geometry within the

performance and mechanical design parameters for the engine under consideration. Patent No.

6,071,077 does not contend otherwise. In addition, Fig 4 of Schwaar shows a swept fan blade

with the claimed relationship between the blade root and tip.

Accordingly, all of the claims of Patent No. 6,071,077 are either anticipated by or

obvious from Alternate A and B of the Count. By the same token, all of the patent

claims, being narrower than Alternates A and B, anticipate the Count. M.P.E.P., supra.

**Claims 18, 19, 22, and 23 of Application No. 09/874,931
Are Designated to Correspond to the Count**

Claim 18. This claim is Alternate A of the Count. It is directed to the same patentable

invention as each of Alternates C and D for the reasons already discussed above.

Claims 19 and 22. These claims are either identical to or based closely on dependent

claims 9 and 13 of Patent No. 6,071,077, respectively. Accordingly, they are obvious from the

Count for the same reasons discussed above in connection with Patent No. 6,071,077 claims 9

and 13.

Claim 23. This claim is Alternate B of the Count. It is directed to the same patentable

invention as each of Alternates C and D for the reasons already discussed above.

Accordingly, all of the claims of Application No. 09/874,931 are either

anticipated by or obvious from each alternate version of the Count. By the same token,

all of the application dependent claims, being narrower than the Count, anticipate the

Count. M.P.E.P., supra.

**Benefit of the Filing Date of Earlier Applications**

Application No. 09/874,931 is a continuation of Application No. 09/343,736, filed on

June 30, 1999, to reissue U.S. Patent No. 5,642,985, issued on July 1, 1997, from Application

Application Control No. 09/874,931
Page 15
Art Unit 3745

No. 08/559,965, filed on November 17, 1995. Since all of those applications share a common

disclosure, Application No. 09/874,931 is entitled to benefit of the November 17, 1995, filing

date of Application No. 08/559,965.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/874,931 | 06/05/2001 | David A. Spear | 3600.100-Cont. | 3517 |

7590     07/21/2003

David M. Quinlan PC
40 Nassau Street
Princeton, NJ 08542

| EXAMINER |
|---|
| VERDIER, CHRISTOPHER M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3745 | 18 |

DATE MAILED: 07/21/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/874.931 | SPEAR ET AL. |
| | Examiner | Art Unit |
| | Christopher Verdier | 3745 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTH(S) FROM
THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒  Responsive to communication(s) filed on <u>19 May 2003</u>.

2a)☐  This action is FINAL.    2b)☒  This action is non-final.

3)☐  Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒  Claim(s) <u>*18,19,22 and 23*</u> is/are pending in the application.

   4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐  Claim(s) _____ is/are allowed.

6)☒  Claim(s) <u>*18,19,22 and 23*</u> is/are rejected.

7)☐  Claim(s) _____ is/are objected to.

8)☐  Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐  The specification is objected to by the Examiner.

10)☒  The drawing(s) filed on <u>05 June 2001</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.

   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11)☐  The proposed drawing correction filed on _____ is: a)☐ approved b)☐ disapproved by the Examiner.

   If approved, corrected drawings are required in reply to this Office action.

12)☐  The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13)☐  Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   a)☐ All  b)☐ Some * c)☐ None of:

   1☐  Certified copies of the priority documents have been received.

   2☐  Certified copies of the priority documents have been received in Application No. _____ .

   3☐  Copies of the certified copies of the priority documents have been received in this National Stage
   application from the International Bureau (PCT Rule 17.2(a)).

   * See the attached detailed Office action for a list of the certified copies not received.

14)☐  Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

   a) ☐ The translation of the foreign language provisional application has been received.

15)☐  Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)       4) ☒ Interview Summary (PTO-413) Paper No(s). *18*.
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)    5) ☐ Notice of Informal Patent Application (PTO-152)
3) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) *17* .    6) ☐ Other: _____



Application/Control Number: 09/874,931                                    Page 2
Art Unit: 3745

Applicants' amendment dated May 19, 2003 has been carefully considered but is deemed

non-persuasive. Claims 18-19 and 22-23 are pending. The claims have been amended to

overcome the rejections under 35 USC 112, first and second paragraphs set forth in the previous

Office action. Correction of the above matters is noted with appreciation.


Receipt of Applicants' Statement Re Surrender of Original United States Patent 5,642,985

dated May 19, 2003 is acknowledged. The Proposed Supplemental Reissue Declaration dated

May 19, 2003 has been reviewed, and is defective for the reasons set forth below.


The examiner notes that there are no prior art rejections pertaining to claims 18-19 and

22-23 of the instant application. The Declaration of Frans A.E. Breugelmans has been carefully

reviewed, and the examiner agrees with Applicants that claim 18 of the present application and

claim 8 of U.S. Patent 6,071,077 define the same invention. The examiner disagrees with

Applicants that claims 2-7 and 10-13 of U.S. Patent 6,071,077 correspond to count 1, because

references teachings these features are required, and the features recited in claims 2-7 and 10-13

of U.S. Patent 6,071,077 are not inherent in claim 18 of the present application.


### *Reissue Applications*

The reissue oath/declaration filed with this application is defective (see 37 CFR 1.175

and MPEP § 1414) because of the following:

It is unsigned by inventors Bruce Biederman, John Orosa, and the Legal Representative

of the deceased inventor David Spear.

Application/Control Number: 09/874,931                                    Page 3
Art Unit: 3745

It does not state that Dennis Kantor is the Legal Representative of the deceased  See

MPEP 605 04(a)

Claims 18-19 and 22-23 are rejected as being based upon a defective reissue declaration

under 35 U S C 251 as set forth above  See 37 CFR 1.175

The nature of the defect(s) in the declaration is set forth in the discussion above in this

Office action

### Information Disclosure Statement

The information disclosure statement filed May 19, 2003 fails to comply with 37

CFR 1 97(c) because it lacks a statement as specified in 37 CFR 1 97(e)  It has been placed in

the application file, but the information referred to therein has not been considered.

The information disclosure statement filed May 19, 2003 fails to comply with 37

CFR 1 97(c) because it lacks the fee set forth in 37 CFR 1 17(p)  It has been placed in the

application file, but the information referred to therein has not been considered.

Because the above information disclosure statement cites Reissue Patent 38,040, which is

a continuation of the instant application, the examiner has listed this reference on form PTO-892.

Application/Control Number: 09/874,931                                    Page 4

Art Unit: 3745

### Prior Art

The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

Berkey, Stalker, Hausmann, Ehrich, Mizuta, Czechoslovakian Patent 110,505, and

French Patent 996,967 are cited to show turbomachines with convergent ducts and blade tips

Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Christopher Verdier whose telephone number is (703)-308-2638.
The examiner can normally be reached on Monday-Friday from 10:00-6:30.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Edward K. Look can be reached on (703) 308-1044  The fax phone numbers for the
organization where this application or proceeding is assigned are (703) 872-9302 for regular
communications and (703) 872-9303 for After Final communications.

Any inquiry of a general nature or relating to the status of this application or proceeding
should be directed to the receptionist whose telephone number is (703) 308-0861.

C V
July 11, 2003

Christopher Verdier
Primary Examiner
Art Unit 3745

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Notice of References Cited*** | 09/874.931 | SPEAR ET AL. |
| | Examiner | Art Unit | Page 1 of 1 |
| | Christopher Verdier | 3745 | |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| | A | US-3546882-A | 12-1970 | Barkey | 60/204 |
| | B | US-2830753-A | 04-1958 | Stalker | 415/222 |
| | C | US-2735612-A | 02-1956 | Hausmann | 415/208.1 |
| | D | US-3843277-A | 10-1974 | Ehrich | 415/119 |
| | E | US-5513952-A | 05-1996 | Mizuta et al. | 415/220 |
| * | F | US-RE38040-E | 03-2003 | Spear et al. | 415/181 |
| | G | US- | | | |
| | H | US- | | | |
| | I | US- | | | |
| | J | US- | | | |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | FR-996967-A | 12-1951 | France | | 415/220 |
| | O | CZ-110,505-A | 04-1964 | Czechoslovakia | | 415/181 |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

| *Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/874,931 | SPEAR ET AL. |
| | Examiner | Art Unit | |
| | Christopher Verdier | 3745 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Christopher Verdier, PTO.*                    (3)_____.

(2) *David Quinlan, Attorney of Record.*           (4)_____.

Date of Interview: *10 July 2003*.

Type:  a)☒ Telephonic   b)☐ Video Conference
     c)☐ Personal [copy given to: 1)☐ applicant    2)☐ applicant's representative]

Exhibit shown or demonstration conducted:  d)☐ Yes    e)☒ No.
If Yes, brief description: _____.

Claim(s) discussed: *18,19,22 and 23*.

Identification of prior art discussed: *all art of record*.

Agreement with respect to the claims f)☐ was reached.  g)☐ was not reached.  h)☒ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *See Continuation Sheet*.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MEPEP Section 713.04)  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

Examiner Note: You must sign this form unless it is an
Attachment to a signed Office action.

_____
Examiner's signature, if required

U.S. Patent and Trademark Office
PTO-413 (Rev. 04-03)                    Interview Summary                    Paper No. 18

Summary of Record of Interview Requirements

Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

────

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
   – Application Number (Series Code and Serial Number)
   – Name of applicant
   – Name of examiner
   – Date of interview
   – Type of interview (telephonic, video-conference, or personal)
   – Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
   – An indication whether or not an exhibit was shown or a demonstration conducted
   – An identification of the specific prior art discussed
   – An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
   – The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
    (The identification of the arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

**Examiner to Check for Accuracy**

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

2

**Continuation Sheet (PTO-413)**                                  Application No.   09/874,931

 Continuation of Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments; The examiner indicated that the amendment filed May 19, 2003 overcame the rejections of the pending claims under 35 USC 112, first and second paragraphs set forth in the previous Office action, and that no prior art rejections are applicable to the pending claims. The examiner indicated that the Supplemental Reissue Declaration filed May 19, 2003 was defective for the reasons set forth in the attached Office action.  The examiner indicated that he agreed with Applicants that claim 18 of the instant application and claim 8 of U.S. Patent 6,071,077 define the same invention  The examiner indicated that he disagreed with Applicants that claims 2-7 and 10-13 of U.S. Patent 6,071,077 correspond to count 1, for the reasons set forth in the attached Office action. Applicants will be granted a personal interview at a later time to discuss a potential interference with U S. Patent 6.071.077



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/874,931 | 06/05/2001 | David A. Spear | 3600.100-Cont. | 3517 |

7590     10/24/2003

David M. Quinlan PC
40 Nassau Street
Princeton, NJ 08542

| EXAMINER |
|---|
| VERDIER, CHRISTOPHER M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3745 | |

DATE MAILED: 10/24/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

| *Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/874,931 | SPEAR ET AL. |
| | Examiner | Art Unit | |
| | Christopher Verdier | 3745 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *Christopher Verdier, PTO*.                    (3)*Rick Kosakowski, Intellectual Property Counsel*.

(2) *David Quinlan, Attorney of Record*.           (4)*Linda Sholl, SPRE*.

   Date of Interview: *21 October 2003*.

Type:  a)☐ Telephonic   b)☐  Video Conference
       c)☒ Personal [copy given to: 1)☐ applicant    2)☒ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes    e)☒ No.
    If Yes, brief description: _____.

Claim(s) discussed: *Applicants' claims 18-19 and 22-23; claims 1-13 of Rowlands 6,071,077*.

Identification of prior art discussed: *Bliss 3,989,406; Schwaar 4,012,172; Weingold 4,726,737, and the Breugelmans Declaration of May 19, 2003*.

Agreement with respect to the claims f)☒ was reached.   g)☐ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *See Continuation Sheet*.

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

**CHRISTOPHER VERDIER**
**PRIMARY EXAMINER**
Examiner's signature, if required

Examiner Note:  You must sign this form unless it is an
Attachment to a signed Office action.

## nmary of Record of Interview Requiremer..

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews

**Paragraph (b)**
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

### 37 CFR §1.2 Business to be transacted in writing.

All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

---

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
- Application Number (Series Code and Serial Number)
- Name of applicant
- Name of examiner
- Date of interview
- Type of interview (telephonic, video-conference, or personal)
- Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc)
- An indication whether or not an exhibit was shown or a demonstration conducted
- An identification of the specific prior art discussed
- An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
- The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

2

Continuation Sheet (PTOL-413)                          Application No.  09/874,931

 Continuation of Substance of Interview including description of the general nature of what was agreed to if an
agreement was reached, or any other comments:  It was agreed that the present record establishes that Applicants'
claims 18-19 and 22-23 and claims 1-3, 5, and 8-13 of the Rowlands Patent 6,071,077 are all directed to a single
patentable invention.  The examiner requested additional expert declaration testimony confirming the explanation at the
interview regarding why Schwaar makes obvious the blade mid-height stagger angle of approximately 30 degrees to
approximately 55 degrees recited in claim 4 of the Rolands Patent, and why Weingold makes obvious the sweep angle
of the line of minimum static pressure points having a negative value in the subsonic flow region recited in claim 6 of
the Rowlands Patent. It was agreed upon that such testimony will establish that claims 4, 6, and 7 of the Rowlands
Patent are directed to the same patentable invention as the claims of the instant application.  It was also agreed upon
that upon receipt of a response to the pending Office action submitting a Supplemental Reissue Declaration and the
above testimony, the examiner will promptly prepare the papers required for the Board to declare an interference
between the present application and U.S. Patent 6,071,077 to Rowlands.

Attorney Docket No 3600.100 Cont.

# #21

RECEIVED
OCT 29 2003
TECHNOLOGY CENTER 3700

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Reissue Application of | ) | Examiner: C. Verdier |
| | : | |
| DAVID A. SPEAR ET AL. | ) | Group Art Unit: 3745 |
| | : | |
| Appln. No.: 09/874,931 | ) | |
| | : | |
| Filed:  June 5, 2001 | ) | |
| | : | |
| For:  SWEPT TURBOMACHINERY BLADE | ) | Date: October 28, 2003 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### RESPONSE TO OFFICE ACTION, SUBMISSION OF
### SUPPLEMENTAL DECLARATION OF FRANS A.E. BREUGELMANS,
### AND APPLICANTS' INTERVIEW SUMMARY

Sir:

This responds to the Office Action of July 21, 2003. The time for responding to the

Office Action has been extended for one month, to November 21, 2003, by the enclosed Petition

for Extension of Time.

The applicants would like to thank Primary Examiner Verdier and Special Programs

Examiner Sholl for the time and courtesies extended to their representatives, David Quinlan and

Richard Kosakowski, at the interview of October 21, 2003. The Examiner's Interview Summary

succinctly summarizes the discussion at the interview and the agreements reached as a result

thereof. These additional comments are made pursuant to the statement in the Interview

Summary that the applicants' formal written reply to the pending Office Action must include the

substance of the interview.

The general thrust of the discussion at the interview was clarification of various technical points in the Declaration of Frans A.E. Breugelmans of May 16, 2003, regarding whether all of the claims of U.S. Patent 6,071,077 (claims 1-13) and all of the claims pending in the present application (claims 18, 19, 22 and 23) are directed to the same patentable invention under 37 C.F.R. § 1.601(n). The Examiner concluded that the record at the time of the interview established that '077 Patent claims 1-3, 5 and 8-13 and all of the applicants' claims are to the same patentable invention.

The Examiner requested additional evidence in the form of further expert testimony to support the applicants' arguments in that regard concerning '077 Patent claims 4, 6 and 7. Claim 7 depends from claim 6, and it was agreed at the interview that if the applicants established that claim 6 is directed to the same patentable invention as the remaining claims, then claim 7 would also be deemed as such. The enclosed Supplemental Declaration of Frans A.E. Breugelmans provides the requested expert testimony establishing that '077 Patent claims 4 and 6 are directed to the same patentable invention as the other claims. Accordingly, the record now fully supports declaration of an interference between the '077 Patent and the present application with all of the claims of both parties involved in the interference.

Turning to the Office Action, the sole rejection of the applicants' claims was based on a defect in the Proposed Supplemental Reissue Declaration submitted with the Amendment of May 16, 2003. The Office Action requested that Dennis Kantor, the executor of inventor David Spear's estate, be identified as the "legal representative" of the estate.

Enclosed is an executed Supplemental Reissue Declaration that is identical to the Proposed Supplemental Reissue Declaration, except in that respect. There are three originals of

the enclosed Supplemental Reissue Declaration, one signed by each of inventors Bruce

Biederman and John Orosa, and one signed by executor Dennis Kantor.

As agreed by the Examiner, submission of the enclosed executed Supplemental Reissue

Declaration addresses the sole ground of rejection, and the enclosed Supplemental Declaration of

Frans A E. Breugelmans, places the present application in condition for declaration of an

interference with the '077 Patent, involving claims 1-13 of the '077 Patent and claims 18, 19, 22

and 23 of the present application.

The applicants would also like to take this opportunity to comment on the Interview

Summary attached to the Office Action. That Interview Summary merely recorded an

informational telephone call from Examiner Verdier subsequent to the Amendment, Information

Disclosure Statement, and Revised Request for an Interference of May 16, 2003. The Interview

Summary accurately records the telephone call.

Any fees due on account of this paper may be charged to Deposit Account No. 50-0409.

All correspondence should continue to be sent to the attorney named below at the address

shown.

Respectfully submitted,

David M. Quinlan
Attorney for Applicants
Registration No. _26,641_

David M. Quinlan, Esq.
DAVID M. QUINLAN, P.C.
40 Nassau Street
Princeton, NJ 08542
Telephone: (609) 921-8660
Facsimile: (609) 921-8651
E-mail: quinlanpc@msn.com

- 3 -

#22

Attorney Docket No. 3600.100 Cont.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Reissue Application of | ) | Examiner: C. Verdier |
| DAVID A. SPEAR ET AL. | ) | Group Art Unit: 3745 |
| Appln. No.: 09/874,931 | ) | |
| Filed: June 5, 2001 | ) | |
| For: SWEPT TURBOMACHINERY BLADE | ) | Application to reissue U.S. Patent 5,642,985 |

TECHNOLOGY CENTER 3700    RECEIVED OCT 29 2003

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### SUPPLEMENTAL DECLARATION
### OF FRANS A.E. BREUGELMANS

Sir:

I, Frans A.E. Breugelmans, do hereby declare as follows:

1.    I am the same Frans A.E. Breugelmans who executed the Declaration of Frans A.E. Breugelmans dated May 16, 2003 ("Original Declaration"), in the above-identified application. This Supplemental Declaration is submitted to further clarify my Original Declaration as it relates to claims 4 and 6 of U.S. Patent No. 6,071,077 to Paul A. Rowlands ("the Rolls '077 Patent"; Exhibit 5 to my Original Declaration).

Claim 4 of the Rolls '077 Patent

2.    Claim 4 reads as follows:

A fan stage of a ducted fan gas turbine engine as claimed in claim 3 wherein the blade is further characterised in that the stagger angle of the mid-height region of the blade is in the range from approximately 30° to approximately 55° relative to the airflow direction.

3.    In my Original Declaration I stated, "I note also that Fig. 6 of Schwaar [U.S. Patent 4,012,172 to Schwaar et al.; Exhibit 6 to my Original Declaration] shows a swept fan blade with a stagger angle that measures between 30° and 55° in the blade mid-height region, although I cannot be certain that drawing is to scale." The following depiction, adapted from Fig. 6 of Schwaar, illustrates the basis of that statement.



4.    The depicted airflow direction is in accordance with the blade orientation in Fig. 4's side elevation of the blade, Fig. 6 being a section taken from Fig. 4 at the blade's mid-height region. Schwaar, col. 3, lines 14-17. The fan rotation direction is labeled in accordance with conventional understanding, in that a fan rotates in a direction that causes each blade's leading edge (which I have labeled consistent with Fig. 4) to encounter the airflow. These airflow and rotation directions are also consistent with Fig. 2 of Schwaar. See col. 4, lines 3-6. The 50° angle shown in green is Schwaar's "setting angle" (labeled "t" in Fig. 2), which corresponds to the stagger angle in the Rolls '077 Patent, as seen in Fig. 6 thereof.

- 2 -

Claim 6 of the '077 Patent

5.　Claim 6 reads as follows: ·

A fan stage of a ducted fan gas turbine engine as claimed in claim 1 wherein the shape of the pressure surface of a swept fan blade and the suction surface thereof creates, in use, a line of minimum static pressure points on the suction surface of the blade, said line of minimum static pressure points is inclined with respect to the axial direction at a sweep angle which varies with span height of the blade, and has a negative value in a region of subsonic flow over the leading edge.

6.　In my Original Declaration, I stated that an ordinarily skilled fan engineer following

U.S. Patent 4,726,737 to Weingold et al. (Exhibit 7 to my Original Declaration) would have

inclined the lines of minimum static pressure points at a sweep angle that varied with blade

height, and that such sweep angle "would have been negative in the inner, subsonic-flow region

of the blade ＿ ." The basis for that statement can be understood by first considering that

Weingold discloses a blade with a leading edge that is swept forward (that is, has a negative

sweep angle) in an inner region adjacent the blade hub. This region of the leading edge is

labeled in green in the following adaptation from Fig. 1 of Weingold.



FIG. 1.

- 3 -

7.    The flow at the blade leading edge in this inner region is commonly subsonic because the blade's tangential velocity (in the direction of rotation) is relatively low near the hub. This is confirmed by Fig. 2 of U.S. Patent 3,989,406 to Bliss (Exhibit 8 to my Original Declaration), which shows a region of subsonic flow (M < 1) in a blade inner region.



9.    Fig. 2a of Weingold, reproduced below, shows a blade's maximum camber line 42 that is swept to generally follow the sweep of the leading edge. The maximum camber point of any subsonic airfoil section is associated with its minimum static pressure point, as explained in Weingold at column 5, lines 13-22 (see also Fig. 3). Accordingly, Weingold's line 42 corresponds to the line of minimum static pressure points along the blade's suction surface.



Forward swept
inner region

_FIG. 2a_

10. Fig 2a. shows the line 42 following the leading edge in a rearward swept outer

region of the blade as it transitions to the forward swept inner region (labeled in green in Fig. 1

reproduced in paragraph 6 above). As an expert in axial-flow turbomachinery, it is my opinion

that a fan engineer of ordinary skill would have used a blade configuration in which the line 42

continued generally to follow the blade leading edge from where it transitions to forward sweep

(labeled in green above) at least part way down the inner region, if not all the way to the blade

hub. To do otherwise would have required an abrupt change in the blade cross-sectional shape

just below the blade height region illustrated in Fig. 2a, and a fan engineer would not normally

have used such a blade configuration.

11. In other words, it was conventional to sweep the blade leading edge inner region

forward (that is, for it to have a negative sweep angle), for the flow at the leading edge in that

region to be subsonic, and for a fan engineer of ordinary skill to use a blade in which the

- 5 -

minimum static pressure line generally followed the leading edge within that region. Accordingly, it is my expert opinion that it would have been obvious to provide a blade having the features recited in claim 6 of the Rolls '077 Patent, including a line of minimum static pressure points that "has a negative value in a region of subsonic flow over the leading edge."

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that the statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under § 1001 of Title XVIII of United States Code, and that such willful false statements made jeopardize the validity of this application or any patent issued thereon.

Date: _27ᵗʰ Oct 2003_

_F. Breugelmans_

Frans A.E. Breugelmans

- 6 -

Attorney Docket No. 3600.100 Cont.

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Reissue Application of | ) | Examiner: C. Verdier |
| | : | |
| DAVID A. SPEAR ET AL. | ) | Group Art Unit: 3745 |
| | : | |
| Appln. No.: 09/874,931 | ) | |
| | : | |
| Filed: June 5, 2001 | ) | |
| | : | Application to reissue |
| For:  SWEPT TURBOMACHINERY BLADE | ) | U.S. Patent No. 5,642,985 |

RECEIVED OCT 29 2003 TECHNOLOGY CENTER 3700

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

<u>SUPPLEMENTAL REISSUE DECLARATION</u>

Sir:

    We, DAVID A. SPEAR, who was a United States citizen residing at Manchester, Connecticut, at the time of his death on October 22, 1995, represented herein by Dennis N. Kantor, a United States citizen who is the legal representative of his estate, BRUCE P. BIEDERMAN, a United States citizen residing at West Hartford, Connecticut, and JOHN A. OROSA, a United States citizen residing at Palm Beach Gardens, Florida, hereby declare and say that:

    Every error in U.S. Patent No. 5,642,985 that has been corrected in the present reissue application, and is not covered by the prior declaration submitted in this application, arose without any deceptive intention on any of our parts.

    We believe that the original said patent is partly inoperative by reason of claiming less than we had the right to claim in that patent. Specifically, we believe that we were entitled at least to claims without language such as that in original patent claims 1 and 2 stating that a "section of the airfoil radially coextensive with the endwall shock extending from the leading

neighbor intercepts the endwall shock so that the endwall shock and the passage shock are coincident," and to claims the same as, or for the same or substantially the same subject matter as, claims in U.S. Patent No. 6,071,077.

Each of us hereby declares that all statements made herein of our own knowledge are true and that all statements made on information and belief are believed to be true; and further that the statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under § 1001 of Title XVIII of United States Code, and that such willful false statements may jeopardize the validity of this application or any patent issued thereon.

Date: _____

           _____
           Dennis N. Kantor
           330 Roberts Street
           East Hartford, CT 06108
           Legal Representative of the Estate of
           David A. Spear, deceased,
           formerly residing at:
           28 Bishop Drive
           Manchester, CT 06040

Date: _____

           _____
           Bruce P. Biederman
           20 High Street
           West Hartford, CT 06119

Date: 7-15-03

           _____
           John A. Orosa
           11730 Cottonwood Circle
           Palm Beach Gardens, FL 33410

- 2 -

Attorney Docket No. 3600.100 Cont.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Reissue Application of | ) | Examiner: C. Verdier |
| | : | |
| DAVID A. SPEAR ET AL. | ) | Group Art Unit: 3745 |
| | : | |
| Appln. No : 09/874,931 | ) | |
| | : | |
| Filed: June 5, 2001 | ) | |
| | : | Application to reissue |
| For:   SWEPT TURBOMACHINERY BLADE | ) | U.S. Patent No. 5,642,985 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

<u>SUPPLEMENTAL REISSUE DECLARATION</u>

Sir:

    We, DAVID A. SPEAR, who was a United States citizen residing at Manchester, Connecticut, at the time of his death on October 22, 1995, represented herein by Dennis N. Kantor, a United States citizen who is the legal representative of his estate, BRUCE P. BIEDERMAN, a United States citizen residing at West Hartford, Connecticut, and JOHN A. OROSA, a United States citizen residing at Palm Beach Gardens, Florida, hereby declare and say that:

    Every error in U.S. Patent No. 5,642,985 that has been corrected in the present reissue application, and is not covered by the prior declaration submitted in this application, arose without any deceptive intention on any of our parts.

    We believe that the original said patent is partly inoperative by reason of claiming less than we had the right to claim in that patent. Specifically, we believe that we were entitled at least to claims without language such as that in original patent claims 1 and 2 stating that a "section of the airfoil radially coextensive with the endwall shock extending from the leading

neighbor intercepts the endwall shock so that the endwall shock and the passage shock are coincident," and to claims the same as, or for the same or substantially the same subject matter as, claims in U.S. Patent No. 6,071,077.

Each of us hereby declares that all statements made herein of our own knowledge are true and that all statements made on information and belief are believed to be true; and further that the statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under § 1001 of Title XVIII of United States Code, and that such willful false statements may jeopardize the validity of this application or any patent issued thereon.

Date: ___7/15/03___

_____
Dennis N. Kantor
330 Roberts Street
East Hartford, CT 06108
Legal Representative of the Estate of
David A. Spear, deceased,
formerly residing at:
28 Bishop Drive
Manchester, CT 06040


Date: _____

_____
Bruce P. Biederman
20 High Street
West Hartford, CT 06119


Date: _____

_____
John A. Orosa
11730 Cottonwood Circle
Palm Beach Gardens, FL 33410

609 - 9 . 1 - 8651

Attorney Docket No. 3600.100 Cont.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Reissue Application of ) | Examiner: C. Verdier |
| : | |
| DAVID A. SPEAR ET AL. ) | Group Art Unit: 3745 |
| : | |
| Appln. No.: 09/874,931 ) | |
| : | |
| Filed: June 5, 2001 ) | |
| : | Application to reissue |
| For:  SWEPT TURBOMACHINERY BLADE ) | U.S. Patent No. 5,642,985 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

SUPPLEMENTAL REISSUE DECLARATION

Sir:

We, DAVID A. SPEAR, who was a United States citizen residing at Manchester, Connecticut, at the time of his death on October 22, 1995, represented herein by Dennis N. Kantor, a United States citizen who is the legal representative of his estate, BRUCE P. BIEDERMAN, a United States citizen residing at West Hartford, Connecticut, and JOHN A. OROSA, a United States citizen residing at Palm Beach Gardens, Florida, hereby declare and say that:

Every error in U.S. Patent No. 5,642,985 that has been corrected in the present reissue application, and is not covered by the prior declaration submitted in this application, arose without any deceptive intention on any of our parts.

We believe that the original said patent is partly inoperative by reason of claiming less than we had the right to claim in that patent. Specifically, we believe that we were entitled at least to claims without language such as that in original patent claims 1 and 2 stating that a "section of the airfoil radially coextensive with the endwall shock extending from the leading

neighbor intercepts the endwall shock so that the endwall shock and the passage shock are coincident," and to claims the same as, or for the same or substantially the same subject matter as, claims in U.S. Patent No. 6,071,077.

Each of us hereby declares that all statements made herein of our own knowledge are true and that all statements made on information and belief are believed to be true; and further that the statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under § 1001 of Title XVIII of United States Code, and that such willful false statements may jeopardize the validity of this application or any patent issued thereon.

Date: _____          _____
                         Dennis N. Kantor
                         330 Roberts Street
                         East Hartford, CT 06108
                         Legal Representative of the Estate of
                         David A. Spear, deceased,
                         formerly residing at:
                         28 Bishop Drive
                         Manchester, CT 06040

Date: 7/19/03            _____
                         Bruce P. Biederman
                         20 High Street
                         West Hartford, CT 06119

Date: _____          _____
                         John A. Orosa
                         11730 Cottonwood Circle
                         Palm Beach Gardens, FL 33410

- 2 -



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/874,931 | 06/05/2001 | David A. Spear | 3600.100-Cont. | 3517 |

| | | |
|---|---|---|
| 7590 | 11/20/2003 | EXAMINER |
| David M. Quinlan PC | | VERDIER, CHRISTOPHER M |
| 40 Nassau Street | | |
| Princeton, NJ  08542 | ART UNIT | PAPER NUMBER |
| | 3745 | 27 |

DATE MAILED: 11/20/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

Application/Control Number: 09/874,931                                    Page 2
Art Unit: 3745

### *Interference*

The Supplemental Declaration of Mr. Breugelmans dated October 29, 2003, and the

Supplemental Reissue Declarations dated October 29, 2003 have been carefully considered by

the examiner. All claims (claims 18-19 and 22-23) are allowable. However, due to a potential

interference, *ex parte* prosecution is SUSPENDED FOR A PERIOD OF 6 MONTHS from the

date of this letter. Upon expiration of the period of suspension, applicant should make an inquiry

as to the status of the application.


Any inquiry concerning this communication or earlier communications from the
examiner should be directed to Christopher Verdier whose telephone number is (703)-308-2638.
The examiner can normally be reached on Monday-Friday from 10:00-6:30.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's
supervisor, Edward K. Look can be reached on (703) 308-1044. The fax phone number for the
organization where this application or proceeding is assigned is (703) 872-9302.

Any inquiry of a general nature or relating to the status of this application or proceeding
should be directed to the receptionist whose telephone number is (703) 308-0861.

Christopher Verdier
Primary Examiner
Art Unit 3745

C.V.
November 6, 2003

AFWAL-TR-86-2013

DESIGN OF A ROTOR INCORPORATING MERIDIONAL SWEEP AND
CIRCUMFERENTIAL LEAN FOR SHOCK LOSS ATTENUATION

Steven L. Puterbaugh
Arthur J. Wennerstrom
Technology Branch
Turbine Engine Division

February 1987

Final Report for Period 1 March 1984 – 30 June 1984

Distribution limited to U.S. Government agencies only; critical technology;
October 1985. Other requests for this document must be referred to the
Aero Propulsion Laboratory (AFWAL/POTX), Wright-Patterson Air Force Base,
Ohio 45433-6563.

04612

WARNING — This document contains technical
data whose export is restricted by the Arms
Export Control Act (Title 22, U. S. C.,
Sec 2751 et seq.) or Executive Order 12470.
Violation of these export laws is subject
to severe criminal penalties.

UNITED TECHNOLOGIES
LIBRARY SYSTEM
Main Library
United Technologies
Research Center
East Hartford, CT 06108

DESTRUCTION NOTICE - Destroy by any
method that will prevent disclosure of
contents or reconstruction of the
document.

AERO PROPULSION LABORATORY
AIR FORCE WRIGHT AERONAUTICAL LABORATORIES
AIR FORCE SYSTEMS COMMAND
WRIGHT-PATTERSON AIR FORCE BASE, OHIO   45433-6563

## NOTICE

When Government drawings, specifications, or other data are used for any purpose other than in connection with a definitely related Government procurement operation, the United States Government thereby incurs no responsibility nor any obligation whatsoever; and the fact that the government may have formulated, furnished, or in any way supplied the said drawings, specifications, or other data, is not to be regarded by implication or otherwise as in any manner licensing the holder or any other person or corporation, or conveying any rights or permission to manufacture, use, or sell any patented invention that may in any way be related thereto.

This technical report has been reviewed and is approved for publication.

MARVIN A. STIBICH, TAM
Compressor Reserach Group
Technology Branch

FOR THE COMMANDER

FRANCIS R. OSTDIEK, Chief
Technology Branch
Turbine Engine Division

MICHAEL E. STEFKOVICH, MAJ, USAF
Deputy Director
Turbine Engine Division
Aero Propulsion Laboratory

If your address has changed, if you wish to be removed from our mailing list, or if the addressee is no longer employed by your organization please notify AFWAL/POTX , Wright-Patterson AFB OH 45433-6563 to help maintain a current mailing list.

Copies of this report should not be returned unless return is required by security considerations, contractual obligations, or notice on a specific document.

UNCLASSIFIED
SECURITY CLASSIFICATION OF THIS PAGE

10000869222

## REPORT DOCUMENTATION PAGE

| 1a. REPORT SECURITY CLASSIFICATION | 1b. RESTRICTIVE MARKINGS |
|---|---|
| Unclassified | |

| 2a. SECURITY CLASSIFICATION AUTHORITY | 3. DISTRIBUTION/AVAILABILITY OF REPORT |
|---|---|
| | Distribution limited to U.S. Government |
| 2b. DECLASSIFICATION/DOWNGRADING SCHEDULE | agencies only; critical technology; October 1985. Other requests for this document (over) |

| 4. PERFORMING ORGANIZATION REPORT NUMBER(S) | 5. MONITORING ORGANIZATION REPORT NUMBER(S) |
|---|---|
| AFWAL-TR-86-2013 | |

| 6a. NAME OF PERFORMING ORGANIZATION | 6b. OFFICE SYMBOL (If applicable) | 7a. NAME OF MONITORING ORGANIZATION |
|---|---|---|
| Aero Propulsion Laboratory | AFWAL/POTX | |

| 6c. ADDRESS (City, State and ZIP Code) | 7b. ADDRESS (City, State and ZIP Code) |
|---|---|
| Wright-Patterson AFB, OH  45433-6563 | |

| 8a. NAME OF FUNDING/SPONSORING ORGANIZATION | 8b. OFFICE SYMBOL (If applicable) | 9. PROCUREMENT INSTRUMENT IDENTIFICATION NUMBER |
|---|---|---|
| | | |

| 8c. ADDRESS (City, State and ZIP Code) | 10. SOURCE OF FUNDING NOS. | | | |
|---|---|---|---|---|
| | PROGRAM ELEMENT NO. | PROJECT NO. | TASK NO. | WORK UNIT NO. |
| | 61102F | 2307 | S1 | 27 |

11. TITLE (Include Security Classification)          (over)
Design of a Rotor Incorporating Meridional

| 12. PERSONAL AUTHOR(S) |
|---|
| S. L. Puterbaugh, A.J. Wennerstrom |

| 13a. TYPE OF REPORT | 13b. TIME COVERED | 14. DATE OF REPORT (Yr., Mo., Day) | 15. PAGE COUNT |
|---|---|---|---|
| Final Report | FROM 1Mar84 TO 30Jun84 | 1987 February | 197 |

16. SUPPLEMENTARY NOTATION

| 17. | COSATI CODES | | 18. SUBJECT TERMS (Continue on reverse if necessary and identify by block number) |
|---|---|---|---|
| FIELD | GROUP | SUB. GR. | |
| | 01 | | |
| | 03 | | |

19. ABSTRACT (Continue on reverse if necessary and identify by block number)

The design of a transonic compressor fan rotor is described. The rotor incorporates leading edge sweep and circumferential lean to reduce effective shock strength to increase efficiency while remaining at the same pressure ratio and flow rate as its predecessors. Aeromechanical constraints and trade-offs are discussed.

| 20. DISTRIBUTION/AVAILABILITY OF ABSTRACT | 21. ABSTRACT SECURITY CLASSIFICATION |
|---|---|
| UNCLASSIFIED/UNLIMITED ☐ SAME AS RPT ☐ DTIC USERS ☒ | UNCLASSIFIED |

| 22a. NAME OF RESPONSIBLE INDIVIDUAL | 22b. TELEPHONE NUMBER (Include Area Code) | 22c. OFFICE SYMBOL |
|---|---|---|
| Steven L. Puterbaugh | (513)255-4738 | AFWAL/POTX |

DD FORM 1473, 83 APR          EDITION OF 1 JAN 73 IS OBSOLETE          UNCLASSIFIED
SECURITY CLASSIFICATION OF THIS PAGE

1

SECURITY CLASSIFICATION OF THIS PAGE

Block 3 (Continued)

must be referred to the Aero Propulsion Laboratory (AFWAL/POTX), Wright-Patterson Air
Force Base, Ohio 45433-6563.

Block 11 (Continued)

Sweep and Circumferential Lean for Shock Loss Attenuation

09334760

55035905

ii

UNCLASSIFIED

SECURITY CLASSIFICATION OF THIS PAGE

FOREWORD

    This report describes the aerodynamic design of a transonic axial-flow inlet stage.  The work was performed in the Turbine Engine Division of the Air Force Aero Propulsion Laboratory, Air Force Systems Command, Wright-Patterson AFB, Ohio. It was accomplished under Project 2307, Task S1, Work Unit 27.  The effort was conducted by Steven L. Puterbaugh and Arthur J. Wennerstrom (AFWAL/POTX) during the period 1 Mar 1984 to 30 June 1984.

## TABLE OF CONTENTS

| SECTION | | PAGE |
|---|---|---|
| I | INTRODUCTION ................................... | 1 |
| II | DESIGN APPROACH ............................... | 2 |
| III | DETAILED DESIGN RESULTS ....................... | 4 |
| | 1. DIMENSIONAL CHARACTERISTICS .............. | 4 |
| | 2. AERODYNAMIC CHARACTERISTICS .............. | 4 |
| | 3. ROTOR BLADE GEOMETRY ..................... | 136 |
| | 4. STRUCTURAL CHARACTERISTICS ............... | 178 |
| | REFERENCES .................................... | 189 |

v

LIST OF ILLUSTRATIONS

| FIGURE | | PAGE |
|---|---|---|
| 1 | Spanwise Distribution of Circumferential Offset | 6 |
| 2 | Computing Station/Streamline Definition of Aerodynamic Flowpath | 7 |
| 3 | Streamwise Distribution of Enthalpy through the Rotor | 8 |
| 4 | Spanwise Distribution of Enthalpy through the Rotor | 9 |
| 5 | Spanwise Aerodynamic Sweep Angle Distribution | 10 |
| 6 | Streamwise Distribution of Wake Blockage | 11 |
| 7 | Streamwise Distribution of Static Pressure through the Rotor | 12 |
| 8 | Spanwise Inlet Relative Mach Number Distribution | 13 |
| 9 | Spanwise Absolute Mach Number Distribution at the Rotor Trailing Edge | 14 |
| 10 | Diffusion Factor/Loss Parameter Curves for the Rotor and Stator | 15 |
| 11 | Spanwise Loss Coefficient Distribution at the Trailing Edge of both the Rotor and Stator | 16 |
| 12 | Spanwise Total Pressure Ratio Distribution at the Trailing Edge of both the Rotor and Stator | 17 |
| 13 | Spanwise Issentropic Efficiency Distribution at the Trailing Edge of both the Rotor and Stator | 18 |
| 14 | Rotor Incidence Angle Distribution | 180 |
| 15 | Chordwise Deviation Distribution | 181 |
| 16 | Spanwise Rotor Solidity Distribution | 182 |
| 17 | Stacked Streamsurface Sections | 183 |
| 18 | Stacked Manufacturing Sections | 184 |



19    Mesh Used for NASTRAN Analysis .................    185

20    Pressure Surface Stress Contours ..............    186

21    Suction Surface Stress Contours ...............    187

22    Spanwise Distribution of Rotor
      Trailing Edge Deviation Angle ................    188

G60E90 9E4E60







*Figure 7. Rotor 9 Print HIGJ 3447*

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 2000

Application or Docket Number

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 3~~22~~ minus 20= | * 2 |
| INDEPENDENT CLAIMS | 8 9 minus 3 = | ~~58~~ |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

* If the difference in column 1 is less than zero, enter "0" in column 2

| SMALL ENTITY TYPE ☐ | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | FEE | OR | RATE | FEE |
| BASIC FEE | 355.00 | OR | BASIC FEE | 710.00 |
| X$ 9= | | OR | X$18= | 36 |
| X40= | | OR | X80= | 4400 |
| +135= | | OR | +270= | |
| TOTAL | | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | • | Minus | ** | = |
| Independent | • | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | • | Minus | ** | = |
| Independent | • | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA |
|---|---|---|---|---|
| Total | • | Minus | ** | = |
| Independent | • | Minus | *** | = |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | ☐ |

| SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|
| RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| X$ 9= | | OR | X$18= | |
| X40= | | OR | X80= | |
| +135= | | OR | +270= | |
| TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 8/00)

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

Filed on behalf of:  Party Spear                PAPER NO. _____

By:    David M. Quinlan, Esq.
       Anthony M. Zupcic, Esq.

       DAVID M. QUINLAN, P.C.
       40 Nassau Street
       Princeton, NJ 08542

       Telephone No.: (609) 921-8660
       Facsimile No.: (609) 921-8651

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

(Administrative Patent Judge Sally C. Medley)

PAUL A. ROWLANDS
Junior Party
(Patent No. 6,071,077)

v.

DAVID A. SPEAR, DENNIS N. KANTOR,
BRUCE P. BIEDERMAN and JOHN A. OROSA
Senior Party

(Application No. 09/874,931)

Patent Interference 105,195

SPEAR CLEAN COPY OF CLAIMS

## SPEAR CLEAN COPY OF CLAIMS

All of the claims contained in United States patent Application No. 09/874,931 as they existed as of the date of the declaration of the present interference are as follows:

Claim 18. A fan stage of a ducted fan gas turbine engine that is rotatable about an axis of rotation and defines a downstream direction along the axis of rotation, comprising:

a fan casing that defines an inner duct wall having a fan rotor region;

a hub disposed concentrically relative to the fan casing;

a fan rotor that includes multiple swept fan blades, the swept fan blades being spaced apart around the hub, each of the multiple swept fan blades having:

a tip profile that corresponds to the inner duct wall of the fan casing;

a leading edge that defines a variable sweep angle in a direction perpendicular to the axis of rotation, the leading edge including:

an inner region adjacent the hub, the inner region defining a forward sweep angle;

an intermediate region between the inner region and the fan casing, the intermediate region defining a rearward sweep angle; and

an outer region between the intermediate region and the fan casing, the outer region being translated forward relative to a leading edge with the same sweep angle as an outward boundary of the intermediate region.

Claim 19. The fan stage according to claim 18, wherein the leading edge at a boundary between the intermediate region and the inner region extends further upstream along the axis of rotation than the leading edge of the inner region.

Claim 22. The fan stage according to claim 18, wherein each of the multiple swept fan blades includes a hub contacting surface that extends further than the tip profile along the axis of rotation.

Claim 23.  A fan stage of a ducted fan gas turbine engine that is rotatable about an axis of rotation and defines a downstream direction along the axis of rotation, comprising:

a fan casing that defines an inner duct wall having a fan rotor region;

a hub disposed concentrically relative to the fan casing;

a fan rotor that includes multiple swept fan blades, the swept fan blades being spaced apart around the hub and being capable of rotating at speeds providing supersonic working medium gas velocities over the blades to cause a shock in the gas adjacent the inner duct wall, each of the multiple swept fan blades having:

a tip profile that corresponds to the inner duct wall of the fan casing;

a leading edge that defines a variable sweep angle in a direction perpendicular to the axis of rotation, the leading edge including:

an inner region adjacent the hub, the inner region defining a forward sweep angle;

an intermediate region between the inner region and the fan casing, the intermediate region defining a rearward sweep angle; and

an outer region between the intermediate region and the fan casing, the outer region being translated forward relative to a leading edge with the same sweep angle as an outward boundary of the intermediate region to provide a sweep angle that causes the blade to intercept the shock.

Respectfully submitted,

David M. Quinlan, Esq.
Attorney for Party Spear
Registration No. 26,641

- 2 -

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing SPEAR CLEAN

COPY OF CLAIMS was served on the Junior Party Rowlands by forwarding same by Federal

Express - next day delivery - on January 14, 2004, to

> William P. Berridge, Esq.
> OLIFF & BERRIDGE, PLC
> 277 South Washington Street
> Suite 500
> Alexandria, VA 22314

David M. Quinlan, Esq.